# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MOISES PEREZ, JR.,**

        **Plaintiff,**

-vs-                                                **Case No.  8:11-cv-1505-T-DNF**

**MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,**

        **Defendant.**

_____

# OPINION AND ORDER

The Plaintiff, Moises Perez, Jr., seeks judicial review of the final administrative decision of

the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental

Security Income ("SSI")[1].  The Commissioner filed the Transcript of the proceedings (hereinafter

referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda

in support of their positions.  For the reasons set out herein, the decision of the Commissioner is

**AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C §405(g).

## I.      Social Security Act Eligibility, Procedural History, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months.

---

[1]      Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.

### A.    Procedural History

Claimant filed three prior applications for Title II benefits.  Two of the applications resulted in hearings and were unsuccessful.  (Tr. 17).  Claimant filed an application for Supplemental Security Income on February 21, 2008, alleging a disability onset date of December 31, 2007[2].  (Tr. 17).  This claim was denied on October 22, 2008, and upon reconsideration on March 10, 2009.  (Tr. 17).

An administrative hearing was held before Administrative Law Judge (ALJ) Richard E. Ouellette on June 2, 2010, in Tampa, Florida.  (Tr. 17).  The Claimant and Vocational Expert (VE) Gerald T. Wili testified at the hearing.  Claimant was represented by an attorney, Michael Steinberg. (Tr. 17).  The ALJ rendered his decision on September 20, 2010, finding Claimant not disabled within the meaning of the Social Security Act.  (Tr. 28).  Claimant filed a request for review of the hearing decision on October 3, 2010, and the Appeals Council denied Claimant's request for review on May 4, 2011.  (Tr. 12).

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a

---

[2]     The memorandums filed by the parties state Claimant's disability begins on August 1, 2008, the date the application was filed.  However, the record shows the Claimant alleged December 31, 2007, when he completed his Social  Security Disability Report (Tr. 127).

reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439(11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).  In conducting this review, this Court may not re-weigh the evidence or substitute our judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the district court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case.  Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  The first step is considering work activity.  If the claimant is doing any substantial gainful activity he is not disabled.  20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment.  If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work.  If the claimant can still do his past relevant work, he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The  fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work.  If the claimant can make an adjustment to other work, the claimant will not be found disabled.  20 C.F.R. § 404.1520(a)(4)(v).

The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287; *see also Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

## II.    Review of Facts

### A.    Background Facts

Claimant was forty-nine years old  when his application was filed and fifty-one years old at the time of the hearing.  (Tr. 27, 39).  He earned a GED and served in the Marine Corp.  (Tr. 40).  The Claimant testified that he did janitorial work then worked as a warehouse worker through 1993.  (Tr. 40).  The Claimant stated that in the past fifteen years he stocked shelves at Lowe's, and he worked in a Sears' warehouse and delivered items for Sears.  (Tr. 40 - 41).  He said he stopped working at the stores because of his back and dizziness.  (Tr. 41).

Claimant testified that he has been receiving $1,064 per month in VA compensation benefits since November 2009.  Before November 2009, the Claimant stated that he was receiving $601 per month in VA compensation benefits for hearing loss.  The Claimant testified that he received an increase in VA benefits for vestibular and equilibrium problems.  (Tr. 41).

Claimant testified that he was having back problems when he filed his application for Supplemental  Security Income in February of 2008.  The Claimant stated that he wakes up with back pain, that his back hurts when he stands, and that his legs and back become numb from standing too long.  (Tr. 42).   Claimant testified that he receives medication and therapy for his back at the VA Hospital in Brooksville.  (Tr. 42).  Claimant stated that he can stand or sit for twenty minutes at one time without having to sit down or stand up.  (Tr. 42).  Claimant appeared in court with a walker that he stated had been prescribed by his provider at the VA.  (Tr. 43).  The Claimant stated that he needs the walker to keep his balance and for his back.  (Tr. 43).  Claimant testified that he can lift ten pounds but not while he is holding the walker.  (Tr. 43).

Claimant testified that he wears hearing aids.  He stated that he cannot understand someone speaking to him if he is in a room with four or five people talking but that his hearing is "better" when he is in a quiet room with one person talking.  (Tr. 43).  Claimant also testified that he has loud ringing in his ears.  (Tr. 44).

Claimant testified that he has obstructive sleep apnea and wears a CPAP machine at night.  He stated that he sleeps three or four hours a night because he thinks "things are in [his] mind."  (Tr. 44).  Claimant also testified that he has had problems with fatigue and tiredness during the day for about the past ten years.  (Tr. 44 - 45).

Claimant testified that he has been seeing a doctor for a mood disorder and anxiety for about ten years, and that he is taking medication for anxiety and depression. (Tr. 45). Claimant stated that he has problems dealing with other people, partly because of his hearing deficiency: "I usually keep on getting mad and I don't understand what they saying so they catch an attitude toward me." (Tr. 45).

Claimant testified that he spends his days watching TV, playing with his dog, sleeping, and reading. (Tr. 45 - 46). He stated that he sometimes cleans the house, drives to the store, and that he used to do gardening and yard work "until the pain started getting worse." (Tr. 46 - 47). The ALJ noted that Claimant cleaned his garage, was observed walking over 1,500 feet without using an assistive device, played video games, talked to neighbors, visited family in 2008, landscaped, performed light gardening, and lifted concrete blocks while doing landscaping. (Tr. 23, 26).

Claimant testified that his lack of concentration, memory problems, and back pain would prevent him from working in a "factory situation" assembling small products, and anywhere he would have to lift more than twenty pounds and could not sit or stand at will. (Tr. 47). Claimant stated that he gets angry because of his back pain and needs a walker to stand. (Tr. 47). He also testified that his conditions, especially his psychological problems, prevent him from maintaining employment. (Tr. 48).

### B.    The ALJ's Findings

The ALJ found Claimant not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 28). At step one of the sequential evaluation process, the ALJ determined that Claimant has not engaged in substantial gainful activity since the date of his application for Supplemental Security Income of February 21, 2008. (Tr. 19).

-6-

At step two, the ALJ found that Claimant has the following severe combination of impairments: (1) bilateral sensorineural hearing loss, (2) tinnitus, (3) gastroesophageal reflux disease (GERD), (4) cervical and lumbar spine degenerative disc disease with disc bulging and spinal stenosis, (5) post-traumatic aggravation of pre-existing cervical and thoracic sprain/strain, (6) degenerative joint disease, (7) sleep apnea, (8) bronchial asthma, (9) obesity, (10) depressive disorder, (11) anxiety disorder, (12) personality disorder, and (13) pain disorder.  (Tr. 19).

At step three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 20).  The ALJ used  the  treating and examining medical sources' findings and the state agency medical consultants' determinations to make this conclusion.

At step four, the ALJ found that "the claimant has the residual functional capacity to perform light to medium work as defined in 20 CFR 416.967(b) and (c), except he has an occasional limitation for bending, stooping, crouching, and kneeling.  The claimant remains able to perform routine, predictable tasks in an environment that does not require acute hearing."  (Tr. 21).

The ALJ also concluded that "[t]he claimant is capable of performing past relevant work as a warehouse worker.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965)."  (Tr. 27).  The ALJ determined that the job of warehouse worker met "the recency, durational, and substantial gainful activity requirements to qualify as past relevant work."  (Tr. 27).  The ALJ relied on the testimony of a vocational expert to conclude that the Claimant could perform the job of warehouse worker.  (Tr. 27).

Although the ALJ found that Claimant is capable of performing past relevant work at step four, the ALJ made alternative findings for step five. (Tr. 27). The ALJ determined that Claimant could perform other jobs in addition to that of a warehouse worker. (Tr. 27). The ALJ relied on the VE's testimony that given the Claimant's age, education, work experience, and residual functional capacity, Claimant would be able to perform other work besides that of a warehouse worker, such as a kitchen helper/dishwasher, a hand packager, or a produce sorter. (Tr. 28).

### C.   Plaintiff's Medical History

The Claimant has approximately ten (10) years of documented visits through the Veteran's Administration facilities and/or hospital. Claimant has been seen for Obstructive Sleep Apnea and examined for neurological disorders. Claimant has multiple x-rays for lumbar and cervical spine problems.

Claimant was admitted to the VA on October 25, 2006, for a mood disorder. A psychiatric evaluation performed by Dr. Teresita Sanjurjo, M.D. diagnosed the Claimant with "Pain Disorder associated with psychological factors." (Tr. 535).

Audiologic tests performed at the VA on March 9, 2007, found mild to moderately severe sensorineural hearing loss for the Claimant's right ear and a mild to severe sensorineural hearing loss for the Claimant's left ear. (Tr. 386).

An MRI L-Spine was taken of the Claimant on October 22, 2007 at the Brooksville VA Clinic, which found moderate stenosis and a spondylitic bulge. (Tr. 318 - 19). On the same date, Claimant also had an MRI of the brain at the Brooksville VA Clinic, which found "no abnormal enhancement or increased diffusion signal to suggest acute or recent infection/inflammation, ischemia or demyelination. (Tr. 321).

-8-

Claimant had an audiogram and an Otoacoustic Emissions test performed by Dr. Krishna M. Ganti, M.D., FACS, on September 11, 2007, which revealed moderate to moderately severe sensory neural hearing loss and bilaterally comparably decreased word discrimination scores. (Tr. 232 - 33).

Claimant met with Dr. Robert Moering, Clinical Psychologist, at the VA on November 19, 2007 for a psychological exam. Dr. Moering noted a pain disorder associated with both psychological factors and a general medical condition and antisocial personality disorder. However, Dr. Moering also noted that "a diagnosis of malingering is possible; however, there is not enough evidence from the current evaluation to make this diagnosis. The evidence from the current evaluation and past reports more likely than not minimally indicate that the veteran is significantly exaggerating his symptoms. . . . [The Claimant's] Mental Disorder symptoms are not severe enough to interfere with occupational and social functioning." (Tr. 367-69).

Claimant was involved in a multiple car collision on December 30, 2007 (Tr. 274), and was admitted to the Brooksville Regional Hospital later that day complaining of aching in the middle back and pelvis. (Tr. 271). A spine X-Ray was taken and Dr. Robert Weaver, III, M.D. dictated his impression that the X-Rays were normal. (Tr. 268 - 69).

Claimant was examined by Dr. Suhas Kulkarni, M.D. at Spine and Rehab Medicine, P.A. on January 14, 2008. Dr. Kulkarni assessed that there was: "(1) Post-traumatic aggravation of pre-existing cervical spine sprain/strain. (2) Post-traumatic aggravation of pre-existing thoracic spine sprain/strain. (3) Post-traumatic aggravation of pre-existing lumbar spine sprain/strain. (4) Myofascial pain syndrome involving paraspinal muscles. (5) Post-traumatic right lateral chest wall contusion with rib fractures. (6) Post-traumatic headaches." (Tr. 275). Claimant returned to Dr. Kulkarni on January

31, February 18, and March 12, 2008.  Dr. Kulkarni found  elements of his original assessment on each occasion.  (Tr. 278 - 80).

Claimant also had appointments  with Dr. Glenn P. Smith, Clinical Psychologist and Dr. Guillermo M.Cadena  of  the Veteran's Administration.  Claimant was seen on February 4, 2008, April 3, 2008, and April 21, 2008.  Claimant's appointments consisted of therapy for anxiety/depression, nicotine dependence, anger and irritability.  At one session, Claimant was prescribed Alprazolam for his anxiety.  (Tr. 413).  Claimant met with Dr. Smith at the VA on May 27, 2008 and September 23, 2008.  Dr. Smith added nicotine dependence with physiological dependence to the previous diagnostic impressions.  (Tr. 397).  The record shows that Claimant continues to be seen in therapy through 2010.  (Tr. 419, 437, 457).

Claimant again visited Dr. Ganti on March 28, 2008. (Tr. 282) Dr. Ganti found some skin inflamation on the Claimant's left ear canal opening, dizziness/disequilibrium with gait disturbance, and sensorineural bilateral hearing loss.  (Tr. 284).

Claimant had an otolaryngology consultation and an audiogram was performed on May 16, 2008, also at the VA.  Dr. Anthony Tucker,  M.D., concluded that the audiogram found that the Claimant's moderate to severe hearing loss had not changed when compared to a previous audiogram, and that there had not been any change in the Claimant's hearing in the last three years.  (Tr. 399).

 Dr. Sharon Ames-Dennard completed a Psychiatric Review Technique Form at the request of the Social Security Administration on July 2, 2008.  Dr. Ames-Dennard concluded that the "data analysis does not support the presence of a mental impairment that meets or equals any [Social Security Disability] listing."  (Tr. 305).

Dr. James Andriole, D.O., Medical Consultant, completed a Physical Residual Functional Capacity Assessment of Claimant on behalf of the Social Security Administration on October 21, 2008. Dr. Andriole determined that Claimant can occasionally lift and/or carry twenty pounds, can frequently lift and/or carry ten pounds, can stand and/or walk with normal breaks for a total of about six hours in an eight hour workday, can sit with normal breaks for a total of about six hours in an eight hour workday, and can perform unlimited pushing and/or pulling. (Tr. 497). Dr. Andriole found that Claimant is occasionally capable of crawling, crouching, kneeling, stooping, balancing, and climbing ramps and stairs but is incapable of climbing ladders, ropes or scaffolds. (Tr. 498). Dr. Andriole determined that Claimant did not have any manipulative, visual, or environmental limitations. (Tr. 499-500). Dr. Andriole also found that Claimant had limited hearing limitations and unlimited speaking limitations. (Tr. 500).

Claimant had an MRI C - spine, MRI of his brain, and an MRI L-Spine taken at the VA on October 27, 2008. (Tr. 651 - 53). Dr. Vaillancourt examined the MRI C-spine and did not find any change compared to a prior study from October 22, 2007. (Tr. 650). Gregory M. Carney, Interpreting Staff Member, did not identify any definite new foci when he examined the MRI of the brain. (Tr. 652 - 53). Dr. John A. Arrington found moderate stenosis and spondylitic bulges when he examined the MRI L-Spine. (Tr. 654).

Dr. James Patty, M.D. completed a Physical Residual Functional Capacity Assessment of Claimant on February 5, 2009, as a Medical Consultant at the request of the Social Security Administration. (Tr. 667). Dr. Patty determined that Claimant is capable of occasionally lifting and/or carrying twenty pounds, can frequently lift and/or carry ten pounds, can sit with normal breaks for a total of about six hours in an eight-hour workday, and does not have any limitations for pushing

and/or pulling.  (Tr. 661).  Dr. Patty found that Claimant can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs.  Dr. Patty determined that Claimant can occasionally balance but cannot climb ladders, ropes, or scaffolds.  (Tr. 662).  Dr. Patty did not find any manipulative or visual limitations.  (Tr. 663).  Dr. Patty concluded that Claimant has limited hearing but does not have any difficulty with his speech.  (Tr. 664).  Dr. Patty noted that Claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and Claimant should avoid all exposure to "[h]azards (machinery, heights, etc.)."  (Tr. 664).

Dr.  J. Patrick Peterson, Ph.D., J.D. completed a Psychiatric Review Technique of the Claimant on March 4, 2009, on behalf of the Social Security Administration.  (Tr. 668).  Dr. Peterson determined that Claimant has an affective disorder - "adjustment reaction with depressive features." (Tr. 671).  Dr. Peterson found that Claimant has mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  (Tr. 678).  Dr. Peterson did  not  find episodes of decompensation.  (Tr. 678).

On March 9, 2009, Vicki  L. Wiman  MS, CCC-A,  FAAA,  QA/Audiology Consultant  for The  Office of  Disability Determinations reviewed evidence about Claimant's hearing impairment. Ms. Wiman agreed with Dr. James Patty's assessment of Claimant's impairment which Dr. Patty had used in making Claimant's SSA-4734 Physical Residual Functional Capacity Assessment.  Ms. Wiman stated that  Claimant "[d]oes not meet 2.08 A or B listing for impaired hearing based on 5/16/08 audiological with pure tone averages for .5, 1, 2 kHz at 43 dB HL for the right and 47dB HL for the left with 72% speech discrimination scores for the right and 52% for the left.  A progressive hearing loss has been documented."  (Tr. 210).

An MRI of Claimant's brain, neck, and head were taken on September 28, 2009, at the VA. Dr. Sadie J. Aguila, M.D., Radiologist, did not find any significant changes in the MRI of the brain and the angiograms of the brain and neck were "unremarkable." (Tr. 958).

Claimant went to the VA emergency room on October 12, 2009, due to pain in his right elbow which was caused by lifting cement blocks while landscaping. He was diagnosed as having a strain/sprain of his bracheoradialis and discharged later that day. (Tr. 900; 907).

Claimant had hip X-Rays taken on April 21, 2010, at the VA, which Dr. Lanny B. Chuang, Radiologist, viewed and opined that Claimant had moderate Degenerative Joint Disease in his right hip. (Tr. 827). Claimant had a pain consultation for back and leg pains on August 25, 2010, at the VA with Eaton I. Yen, D.O. who ordered an MRI of the Lumbar Spine. (Tr. 1251).

Claimant had an MRI of the Lumbar Spine without Contrast taken on September 21, 2010, at the VA. (Tr. 1121). Claimant reported that he was told by his primary care doctor to go to the Emergency Room to discuss his lower back MRI. (Tr. 1239). Claimant was admitted to the VA on September 22, 2010 for testing for osteomyelitis. (Tr. 1125). An MRI of Claimant's Lumbar Spine with Contrast was taken on September 22, 2010 . (Tr. 1119). Dr. Rao Sangeeta found an abnormal enhancement in the Claimant's right paravertebral soft tissues after looking at the MRI's of Claimant's spine. (Tr. 1124; 1120).

Claimant had a chest X-Ray taken on September 22, 2010 at the VA. Dr. Lanny B. Chuang, Radiologist, found "[m]inimal infiltrate or atelectasis [of the] left lower lobe." (Tr. 1121). Claimant had a transthoracic echocardiogram taken on September 23, 2010 at the VA which found that "the left ventricular size, thickness and function are normal, ejection fraction = 55-60%, mildly dilated inferior vena cava, no vegetations seen." (Tr. 1270). Claimant had a chest X-Ray taken on September 24,

2010 at the VA. (Tr. 1105). Claimant had a bone biopsy and a paravertebral soft tissue biopsy on September 27, 2010 at the VA. (Tr. 1102, 1167). A pathology report performed on the paravertebral lesion biopsy by Dr. Jennifer L. Reed, M.D., around September 29, 2010, did not find evidence of malignancy. (Tr. 1271). Claimant was discharged from the VA on September 28, 2010, with a discharge diagnosis of vertebral osteomyelitis with discitis. (Tr. 1125). Claimant's Terazosin, Cyancobalamin, Flunisolide, and Vardenafil were discontinued, and Cefepime, Vancomycin, Acetaminophen, Bisacodyl, Fondaparinux, Vancomycin, and Zolpidem were added during his hospital stay. (Tr. 1128, 1220).

Claimant met with Shannon N. Gaines, BSN RN-BC, Staff Nurse on October 7, 2010 at the VA. (Tr. 1107). Claimant had an infectious disease consultation with Dr. Kevin M. Smith, M.D. at the VA on November 2, 2010 and was given a six week home antibiotic regimen. (Tr. 1091). Claimant had an MRI of the lumbar spine on November 8, 2010, at the VA which did not "conclusively suggest worsening infection at the lumbar site." (Tr. 1089). Claimant again met with Dr. Kevin M. Smith, M.D. on November 15, 2010, and had his antibiotic therapy extended. (Tr. 1151).

### D.    Vocational Expert Testimony

Vocational Expert (VE) Gerald T. Wili also testified at the hearing. (Tr. 48 - 59). The ALJ presented the following hypothetical to the VE:

> Assume that an individual is the same age, education and work experience as the claimant, has the following residual functional capacity. Capable of light to medium work with an occasional limitation for bending, stooping, crouching and kneeling but capable of performing routine, predictable tasks in environment that does not require acute hearing. Are there any jobs? (Tr. 50).

The VE testified that  Claimant's past employment as a warehouse worker and a janitor would fit the hypothetical.  (Tr. 50).  The VE also stated that unskilled, medium level jobs, such as a kitchen helper and a hand packager packing items in boxes, would fit the hypothetical.  (Tr. 50).  The VE testified that, at the light level, someone could work as a produce sorter and fit the hypothetical.  (Tr. 51).

Attorney Steinberg then asked the VE "to add to the light hypothetical the ability to only occasionally climb, never climb ropes or scaffolds or ladders but occasionally climb ramps and stairs. Balance, stoop, kneel, crouch and crawl only occasionally."  (Tr. 51).  Mr. Steinberg defined "stooping" to also include "standing and lean[ing] forward so at an angle."  He added that someone in the hypothetical would only be able to "stoop" while standing for up to a third of the day.  (Tr. 51). The VE responded that a warehouse worker, a kitchen helper, and a produce sorter would still fit into Mr. Steinberg's light hypothetical.  (Tr. 52).  The VE testified that janitorial work may not fit into Mr. Steinberg's hypothetical.  (Tr. 52).

Mr. Steinberg then asked the VE to add to the scenario that the individual could only perform light work and would have to sit two hours out of an eight hour work day.  The VE testified that the janitorial work would not meet this criteria because it is medium work but that a produce sorter would meet the criteria.  (Tr. 52 - 53).

The VE then testified that an individual who would have to hold on to a walker or table in order to stand more than five minutes at a time would not be able to perform any of the jobs that he had previously suggested.  (Tr. 54).  The VE also stated that a produce sorter is classified as light work because it requires occasional reaching and constant handling.  (Tr. 58).  The VE testified that a produce sorter sits or stands at a waist level bench, picks items off of a conveyor belt, and weighs and culls fruits and vegetables.  (Tr. 58).

-15-

III.    **Specific Issues and Conclusions of Law**

Claimant raises two issues on appeal.  As stated by the Claimant, they are: (1) The ALJ failed to adequately address the plaintiff's allegations of difficulty hearing in a non-quiet environment, and (2) The ALJ erred by relying on answers of a vocational expert to a hypothetical question which did not include all of the plaintiff's limitations.  (Doc. 20 p. 2).

A.    **The ALJ Adequately Addressed  Plaintiff's Allegations Of Difficulty Hearing In A Non-Quiet Environment.**

Claimant contends that the ALJ did not address his complaint that his hearing was more diminished in a noisy environment compared to a quiet environment.

A standard applies when claimants attempt to establish disability through their subjective symptoms, which requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  The standard also applies to complaints of subjective conditions other than pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  The ALJ must give explicit and adequate reasons for discrediting subjective testimony or "the record must be obvious as to the credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  Claimant's testimony must be accepted as true if the ALJ fails to state the reasons for discrediting the subjective testimony. *Holt*, 921 F.2d at 1223.

The ALJ found evidence of hearing loss in Claimant.  At step two of the sequential evaluation process, the ALJ found that Claimant's severe combination of impairments included bilateral sensorineural hearing loss.  (Tr. 19).  The ALJ noted in his report that Claimant's May 2008, audiogram found that Claimant's bilateral moderate to severe hearing loss had not changed when compared to an earlier audiogram.  (Tr. 22).  The ALJ also included Claimant's April 2009 audiogram testing in his report, which "revealed the claimant's hearing was a progressive condition, and monothermal calorics indicated an improvement in vestibular function."  (Tr. 23).

The ALJ also wrote that Disability Determination Services consultants James Andriole, D.O. and James Patty, M.D. determined that Claimant had limitations for hearing.  (Tr. 23).  The ALJ included in his report that audiologist consultant Vicki Wiman and Dr. Patty found that Claimant has moderate to severe bilateral hearing loss, "but well below the requirements of meeting Listing 2.08." (Tr. 23).  Therefore, the ALJ stipulated in his determination of Claimant's residual functional capacity that the Claimant can perform tasks "in an environment that does not require acute hearing" because of his tinnitus and hearing loss.  (Tr. 24).

The ALJ also addressed Claimant's alleged difficulty hearing in non-quiet environments.  The ALJ questioned Claimant about his difficulty hearing in non-quiet environments during the hearing:

> Q [ALJ]      When you wear hearing aids can you hear pretty clearly?
> A [Perez]      Sometimes.
> Q      This is dependent whether other people are talking?
> A      Yes.
> Q      If you're in a room and there's four or five people talking and you're trying to listen to somebody, do you have any difficulty hearing?
> A      Yes, I can't understand.
> Q      If you're in a quiet room like we're in now where just one person is talking, is that better?
> A      Yes.
> Q      Now do you have ringing in your ears?

A       Yes.

Q       Is it loud?

A       Yes.  (Tr. 43-44).

The ALJ also addressed  Claimant's testimony about his difficulty hearing in non-quiet environments in his report: "The claimant specifically testified at the hearing to . . . difficulty hearing with background noises present, ringing in his ears."  (Tr. 25).

The ALJ concluded that the objective medical testing does not support  Claimant's contention "that he has lost his hearing to the extent that he maintains."  (Tr. 26).  The ALJ supports this finding by quoting Dr. Ganty's evaluation of  Claimant, which questioned the extent of  Claimant's supposed hearing loss. (Tr. 26).  The ALJ also quotes  Claimant's September 2006 auditory evaluation in which doctors noted that  Claimant did not behave consistently with someone with organic hearing loss.  (Tr. 26).  The ALJ noted that tinnitus is not mentioned in the Claimant's VA files over the last several years.  (Tr. 26).  The ALJ noted inconsistencies in Claimant's statements to his providers at the VA and  Claimant's statements in his application for benefits.  (Tr. 25).  The ALJ also noted "the claimant's August 2009 report to providers at the VA that he had lied in the past about depressive symptoms resulting from his hearing loss . . . brings all of his allegations into doubt."  (Tr. 26).

The record shows the ALJ adequately addressed  Claimant's allegations of difficulty hearing in a non-quiet environment.  The ALJ noted evidence of  Claimant's underlying medical condition - his bilateral sensorineural hearing loss.  However, the ALJ determined that  Claimant  did not establish a disability based on his subjective testimony of difficulty hearing in a non-quiet environment.  Substantial evidence supports the ALJ's determination that the ALJ correctly

-18-

determined that Claimant did not present objective medical evidence that confirms the severity of the alleged difficulty hearing in a non-quiet environment nor that Claimant's bilateral sensorineural hearing loss is not of such a severity that it can be reasonably expected to give rise to the alleged difficulty hearing in a non-quiet environment.

## B.     The ALJ Properly Relied On Vocational Expert's Testimony Which Included All Of Plaintiff's Limitations.

Claimant contends that the Commissioner failed to meet his burden at step five of the disability determination process because he relied on incorrect Vocational Expert testimony. (Doc. 20 p. 7).[3] Claimant argues that he cannot perform tasks that require even non-acute hearing in a non-quiet environment. Claimant asserts that the job of warehouse worker has a moderate noise level and that of hand packager, kitchen helper, and agricultural sorter have a loud noise level. (Doc. 20 p. 8).

The Commissioner asserts that the ALJ's hypothetical question to the VE included all of the Claimant's "reasonable limitations," and the ALJ correctly relied on said testimony. (Doc. 22 p. 9-10).

"The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture. . . . [F]or a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable

---

[3]     At step four, the ALJ determined that Claimant is capable of performing past relevant work and only discussed other jobs as alternative findings. (Tr. 27). The ALJ is not required to continue to the next step of the sequential evaluation process if he or she makes a determination at one step that Claimant is disabled or not disabled. 20 C.F.R. § 404.1520(a)(4) (2012).

person would accept as adequate support to a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439(11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Claimant contends that the ALJ erred by not excluding jobs requiring "even non-acute hearing in a non-quiet environment" from the hypothetical that was posed to the VE.  (Doc. 20 p. 8).  At the hearing, the ALJ presented the following hypothetical to the VE:

> Assume that an individual is the same age, education and work experience as the claimant, has the following residual functional capacity.  Capable of light to medium work with an occasional limitation for bending, stooping, crouching and kneeling but capable of performing routine, predictable tasks *in environment that does not require acute hearing*. Are there any jobs?  (Tr. 50) (emphasis added).

The ALJ posed a hypothetical question that comprised all of Claimant's impairments so the VE's testimony constituted substantial evidence. Because the VE's testimony constituted substantial evidence and the ALJ relied on the VE's testimony in articulating jobs that  Claimant is able to perform, the ALJ's determination of jobs that Claimant may perform is supported by substantial evidence.

## VI.    Conclusions

The ALJ's decision is supported by substantial evidence and the proper legal principles. Therefore, Plaintiff has not been under a disability, as defined in the Social Security Act, since February 21, 2008, the date the application was filed.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED.**  The Office of the Clerk directed

to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this 10th  day of    July, 2012.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record

-21-